UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS BELL TELEPHONE COMPANY, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) No. 06 C 3431<br>) |
| v. | ) Judge John W. Darrah<br>) |
| GLOBAL NAPS ILLINOIS, INC.; GLOBAL NAPS INC.; GLOBAL NAPS NEW HAMPSHIRE, INC.; GLOBAL NAPS NETWORK, INC.; GLOBAL NAPS REALTY, INC.; and FERROUS MINER HOLDINGS, LTD., | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Illinois Bell Telephone Company, Inc. ("AT&T Illinois"), filed a ten-count Amended Complaint against Defendants – Global NAPs Illinois, Inc. ("Global Illinois"); Global NAPs, Inc.; Global NAPs New Hampshire, Inc.; Global NAPs Network, Inc.; Global NAPs Realty, Inc.; and Ferrous Miner Holdings, Ltd. – for violation of federal and state tariffs and for violation of an interconnection agreement ("the Agreement"). Global Illinois now contends that this Court must dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject-matter jurisdiction.

### The Telecommunication Agreement of 1996

The Telecommunications Act of 1996 ("the Act") sought to deregulate the telecommunications industry. 47 U.S.C. § 251, *et seq.* (2006). The Act requires that an incumbent or existing local exchange carrier ("ILEC") provide competing local exchange carriers ("CLECs") access to interconnect to its network for the "transmission and routing of telephone exchange service and exchange access." 47 U.S.C. § 251(c)(2).

Under Sections 251 and 252 of the Act, ILECs and CLECs have the duty to negotiate in good faith to establish the terms and conditions of agreements regarding reciprocal compensation for the transport and terminations of certain calls. 47 U.S.C. §§ 251(c), 252. If the parties are unable to reach an agreement, either party may petition the state public utility commission or Federal Communications Commission ("FCC") for arbitration. 47 U.S.C § 252(b)(1). A final agreement, whether negotiated or arbitrated, is to be reviewed by the state commission or FCC in order to determine if the agreement complies with the Act. "Any interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission. A State commission to which the agreement is submitted shall approve or reject the agreement, with written findings as to any deficiencies." 47 U.S.C. § 252(e)(1).

The state commission may only reject an agreement that has been negotiated if it finds that: "the agreement (or portion thereof) discriminates against a telecommunications carrier not a party to the agreement" or (2) "the implementation of such agreement or portion is not consistent with the public interest, convenience, and necessity." 47 U.S.C. § 252(e)(2)(A).

An agreement adopted by arbitration may be rejected if the state commission finds that it "does not meet the requirements of section 251 of [the Act], including the regulations prescribed by the Commission pursuant to section 251 of this title, or the standards set forth in subsection (d) of [section 252]." 47 U.S.C. § 252(e)(2)(B). The Act further allows any party that is "aggrieved" to bring an action in federal court to challenge the terms of the interconnection agreement:

> In any case in which a State fails to act as described in paragraph (5), the proceeding by the Commission under such paragraph and any judicial review of the Commission's actions shall be the exclusive remedies for a State commission's failure to act. In any case in which a State commission make a determination under this

2

> section, any party aggrieved by such determination may bring an
> action in an appropriate Federal district court to determine whether
> the agreement or statement meets the requirements of section 251
> of this title and this section.

47 U.S.C. § 252(e)(6).

## BACKGROUND

AT&T Illinois is an Illinois corporation, which has its headquarters and principal place of business in Chicago, Illinois. AT&T Illinois is an ILEC, as defined in Section 251(h) of the Act, in its authorized service areas in Illinois. 47 U.S.C. § 251(h).

Global Illinois is a Delaware corporation with its principal place of business in Massachusetts. Global Illinois is certified by the Illinois Commerce Commission ("ICC") as a CLEC to provide telecommunication services in Illinois. The remaining Defendants are all Delaware corporations and all have their principal place of business located at 10 Merrymount Street in Quincy, Massachusetts. AT&T Illinois alleges that all the Defendants are controlled as a single economic entity that provides telecommunications and related services under the "Global NAPs" name. AT&T Illinois contends that all the Defendants should be treated as a single enterprise.

AT&T Illinois and Global Illinois engaged in negotiations of the terms and conditions for the Agreement. The parties then arbitrated the remaining unresolved issues before the ICC in ICC Docket No. 01-0786. The ICC approved the final version of the Agreement in ICC Docket No. 03-0296. The Agreement was signed and took effect on February 10, 2003. The Agreement

established the rates, terms, and conditions for the reciprocal compensation between AT&T Illinois and Global Illinois, as well as "transiting" service. Pursuant to this Agreement and AT&T Illinois' state and federal tariffs, AT&T Illinois has provided products and services to Global Illinois.

In order to serve its customers, Global Illinois obtained a number of services from AT&T Illinois. These services are ordered and provided under either AT&T Illinois' federal or state access tariffs or under the Agreement. Tariffs are public documents filed by a telephone company that define the rates, terms, and conditions on which it will provide certain services and facilities. When a customer orders services or facilities under a tariff, it accepts those rates, terms, and conditions. The two tariffs allegedly at issue in this case are: (1) AT&T Illinois' federal FCC Tariff No. 2, which governs interstate access service, the provision of dedicated "special access" facilities, the provision of Signal Transfer Protocol ("STP") dedicated network access links, and local number portability queries; and (2) AT&T Illinois' Illinois Commerce Commission Tariff 21, which governs intrastate access service and the provision of intrastate special access facilities.

AT&T Illinois filed its Complaint on June 23, 2006, alleging that Global Illinois has violated federal and state tariffs, as well as the Agreement, by refusing to pay any of the charges associated with the tariffs and the Agreement.

## ANALYSIS

In reviewing a motion to dismiss for lack of subject-matter jurisdiction, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the petitioner. *See Alicea-Hernandez v. The Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). If the motion to

dismiss is based on denials of the truth of the allegations, however, the court may "look beyond jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject-matter jurisdiction exists." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 782 (7th Cir. 1979); *see also Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993); *Amoakowaa v. Reno*, 94 F.Supp.2d 903, 905 (N.D. Ill. 2000). A litigant cannot rely on frivolous claims to establish jurisdiction. *See Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003) (*Williams*).

Here, AT&T Illinois alleges federal-question jurisdiction. Federal-question jurisdiction arises when a complaint establishes that federal law created the cause of action or that the litigant's right to relief necessarily depends on the resolution of a substantial question of federal law. *Williams*, 351 F.3d at 298. Counts I-IV allege that Global Illinois has utilized various services from AT&T Illinois under the FCC Tariff No. 2 and that Global Illinois has refused to pay the duly rendered bills. AT&T Illinois asserts that this Court has jurisdiction to resolve Counts I-IV of this Complaint under 28 U.S.C. §§ 1331, 1332, 1337, 2201, 2202, and 47 U.S.C. §§ 203 and 206-07, and that supplemental jurisdiction exists over Counts V-X under 28 U.S.C. § 1367. Global Illinois contends that each of AT&T Illinois' claims arise out of disputes over the interpretation of the Agreement entered into by the parties. As a result, Global Illinois argues that this Court does not have original jurisdiction to hear disputes regarding the interpretation and enforcement of the Agreement, as the disputes have not been addressed by the ICC, which approved the Agreement.

This Court does have subject-matter jurisdiction to hear requests for enforcement of federal tariffs. As the Seventh Circuit has recognized, a filed tariff is not to be treated as a mere contract under state law; rather, "tariffs are something more – at least the equivalent of federal

regulations or law – so suits to challenge or invalidate tariffs arise under federal law." *Dreamscape Design, Inc. v. Affinity Network, Inc.*, 414 F.3d 665, 668-69 (7th Cir. 2005), *citing Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488-89 (7th Cir. 1998) (*Cahnmann*). In *Cahnmann*, a consumer brought a state class-action suit against a long distance carrier, Sprint, which was removed to federal court. *Cahnmann*, 133 F.3d at 486. The Seventh Circuit affirmed the district court's grant of removal to federal court, as well as the district court's judgment on the pleadings, as the class had called for the district court to invalidate a federal tariff, which was prohibited by the Act. *Cahnmann*, 133 F.3d at 486. Most instructive as to the present issue in this case, the Seventh Circuit went on to discuss the significance of and remedy for a violation of a tariff. The Court stated that if:

> Sprint violated the tariff to her [plaintiff's] detriment, she would be entitled to proceed against Sprint under federal law. She could either seek reparations in an administrative proceeding before the FCC, or bring a suit for damages directly under the Communications Act, 47 U.S.C. §§ 206, 207 . . . .

*Cahnmann*, 133 F.3d at 487 (internal citations omitted), *citing United States v. Western Pacific R.R.*, 352 U.S. 59, 63-65 (1956); *City of Peoria v. General Electric Cablevision Corp.*, 690 F.2d 116, 120-21 (7th Cir. 1982); *National Communications Ass'n, Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 222-23 (2d. Cir. 1995); *Allnet Communications Service, Inc. v. National Exchange Carrier Ass'n, Inc.*, 965 F.2d 1118 (D.C. Cir. 1992).

Thus, a federal tariff is equal to that of a federal regulation; "and so a suit to enforce it, . . . arise[s] under federal law." *Cahnmann*, 133 F.3d at 488-89, *citing Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 555 (1983) (*per curiam*); *Louisville & Nashville R.R. v. Rice*, 247 U.S. 201 (1918); *MCI Telecommunications Corp. v.*

6

*Teleconcepts, Inc.*, 71 F.3d 1086, 1093-96 (3d Cir. 1995); *Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, 391 F.2d 486 (2d. Cir. 1968). Accordingly, following the Seventh Circuit's guidance in *Cahnmann*, this Court has subject-matter jurisdiction to proceed with AT&T Illinois' suit for damages arising from the FCC Tariff No. 2 pursuant to 47 U.S.C. §§ 206-07.

### *Supplemental Jurisdiction*

Pursuant to 28 U.S.C. § 1367(a), the state-law claims alleged against the Defendants fall within this Court's supplemental jurisdiction if they are "so related to [the federal] claims . . . that they form part of the same case or controversy." The "federal court's original jurisdiction over federal questions carries with it jurisdiction over state-law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court compromises but one constitutional 'case.'" *Groce v. Eli Lilly & Co.*, 193 F.3d 496 (7th Cir. 1999), *quoting City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164-65 (1997). The test is simply whether "a plaintiff's claims are such that he would be ordinarily expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). However, a court may decline to exercise supplemental jurisdiction over a claim if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).

AT&T Illinois asks this Court to exercise supplemental jurisdiction over Counts V and VI, which involve collection claims under AT&T Illinois' state tariffs; over Counts VII-IX, which involve collection claims under the Agreement entered into under the Act; and over Count X, which requests damages in *quantum meruit*. Global Illinois argues that 47 U.S.C. § 252(e)(6) deprives this Court of jurisdiction over the claims.

## Counts VII-IX

As other circuits have appreciated, Congress has not spoken on the method of interpretation and enforcement procedures of disputes arising from previously approved interconnection agreements. *Core Communications, Inc. v. Verizon Pa., Inc.*, 493 F.3d 333, 340-41 (3d Cir. 2007) (*Core*). Under *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 843 (1984), federal courts must defer to an implementing agency's interpretation of a statute if (1) "the statute is silent or ambiguous with respect to the specific issue" in dispute and (2) "the agency's answer is based on a permissible construction of the statute." *In the Matter of Starpower Communications, LLC*, 15 F.C.C.R. 11277 (F.C.C. 2000), the FCC recognized the statute's silence, stating, "[i]n applying Section 252(e)(2), we must first determine whether a dispute arising from interconnection agreements seeking interpretation and enforcement of those agreements is within the states' 'responsibility' under Section 252. We conclude that it is." The Third Circuit noted the "responsibility" of a state commission in this regard can be subject to two interpretations: a narrow interpretation, which would suggest that a state commission has, at a minimum, a non-exclusive authority to enforce an interconnection agreement; or, alternatively, a broad interpretation, which allows for a state commission to have sole authority to hear the enforcement proceeding initially, subject to appellate review by a federal court. *Core*, 493 F.3d at 341-43. The *Core* court determined that a broad interpretation was appropriate, given the "symmetrical and coherent regulatory scheme" for which the Act provides through the state commissions. *Core*, 493 F.3d at 342-43. Moreover, as the Fifth Circuit held, "the Act's grant to the state commissions of plenary authority to approve or disapprove these interconnection

agreements necessarily carries with it the authority to interpret and enforce the provisions of the agreements that state commissions have approved." *Sw. Bell Tel. Co. v. PUC*, 208 F.3d 475, 479-80 (5th Cir. 2000) (*Sw. Bell Tel. Co.*).

Although the Seventh Circuit has not encountered this enforcement issue in the same context, in *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 338 (7th Cir. 2000) (*MCI*), the Seventh Circuit "decline[d] to read subsection 252(e)(6) so narrowly," holding "[a] state's commission's authority to approve or reject interconnection agreements under the Act necessarily includes the authority to interpret and enforce, to the same extent, the terms of those agreements once they have been approved by that commission." In *Illinois Bell Tel. Co. v. Worldcom Tech., Inc.*, 179 F.3d 566, 574 (7th Cir. 1999), the Seventh Circuit clarified a federal district court's role in deciding issues under the Act:

> Lest there be any misunderstanding about what this conclusion means, we add that any issues of state law remain open for determination in the proper forum. Section 252(e)(6) authorizes a federal court to determine whether the agency's decision departs from federal law. A decision "interpreting" an agreement contrary to its terms creates a different kind of problem - one under the law of contracts, and therefore one for which a state forum can supply a remedy.

The Supreme Court, in *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 642 (2002) (*Verizon*), held that Section 252(e)(6) does "not *divest* the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with federal law." Therefore, a federal district court can review a state commission's "interpretation or enforcement of an interconnection agreement"; but nothing in *Verizon* indicates or suggests that a federal district court has jurisdiction to decide such issues without prior review by the state commission.

In this case, AT&T Illinois did not seek enforcement of the Agreement through the ICC; and, thus, this Court cannot review a decision or determination which has yet to be made by the ICC. Accordingly, this Court lacks subject-matter jurisdiction over these claims. *See AT&T Communications of Ill., Inc. v. Illinois Bell Tel. Co.*, 1998 WL 525437 (N.D. Ill. Aug. 18, 1998) (holding that the court lacked subject-matter jurisdiction over claims that were not the subject of the ICC's determination).

AT&T also argues that a clause in the parties' Interconnection Agreement ("ICA") provides that it may pursue its remedies in this Court. Once the ICC approved the parties' ICA, the parties are bound to that agreement; and AT&T is within its right to bring suit in federal court to resolve a dispute arising under the ICA.

An agreed ICA must be submitted to the State commission for approval. 47 U.S.C. § 252(a)(1); (b)(1). The State commission may reject an ICA if it finds that it discriminates against a telecommunications carrier not a party to the ICA; it is inconsistent with the public interest, convenience or necessity; or does not meet the requirements of Section 251 of the Telecommunications Act. 47 U.S.C. § 252(e)(2)(A),(B).

The Formal Dispute Resolution section of the parties' ICA relied upon by AT&T provides, in relevant part, that if certain claims, including all claims arising under federal or state statute, "are not resolved through informal dispute resolution, they will not be subject to arbitration and must be resolved through any remedy available to a party pursuant to law, equity or agency mechanism."

AT&T reads this clause as allowing it to bring its breach of contract claims directly to the ICC if it chose to do so; but it does not require it to do so, allowing it to bring its claims to this Court. However, AT&T reads the clause too broadly. The remedy must be available pursuant to

law, equity or agency mechanism. As discussed above, the *law*, pursuant to the Act, requires that AT&T first bring its claims to the ICC. The parties cannot contract for jurisdiction in this Court, *see Adkins v. Illinois Central R.R. Co.*, 326 F.3d 828, 833 (7th Cir. 2003), and cannot contract for judicial review that is contrary to the requirements of the Act. *See Bell Atlantic-Virginia, Inc. v. Worldcom Tech. of Virginia*, 70 F. Supp. 2d 620, 626 (E.D. Va. 1999).

For the reasons set forth above, this Court refuses to grant supplemental jurisdiction to Counts VII-IX. Additionally, this Court refuses to grant supplemental jurisdiction as to Counts V and VII, state-law tariff-collection claims, and as to Count X, a claim in *quantum meruit*, as these contractual matters are more appropriately handled in a state forum.

## CONCLUSION

For the foregoing reasons, Global Illinois' Motion to Dismiss is denied as to Counts I-IV. As discussed above, this Court refuses to extend supplemental jurisdiction to Counts V-X.

Dated: December 17, 2007

JOHN W. DARRAH
United States District Court Judge